MARS ASSOCIATES, INC., and NORMEL CONSTRUCTION CORP., as Joint Venturers, Respondents, v NEW YORK CITY EDUCATIONAL CONSTRUCTION FUND, Appellant.

MARTIN MECHANICAL CORPORATION, Respondent, v MARS ASSOCIATES, INC., and NORMEL CONSTRUCTION CORP., a Joint Venture, and FEDERAL INSURANCE COMPANY, Appellants.

First Department, March 17, 1987

## APPEARANCES OF COUNSEL

*John M. O'Connor* of counsel *(Mark Weldon* and *Peter A. Triandafilou* with him on the brief; *Malcolm B. Stark* and *DeForest & Duer,* attorneys), for New York City Educational Construction Fund, appellant.

*Louis Cantor* and *Julius L. Schapira* of counsel *(Max E. Greenberg, Cantor & Reiss,* attorneys), for Mars Associates, Inc., and another.

*Jonah C. Grill* of counsel *(Tunstead, Schechter & Torre,* attorneys), for Martin Mechanical Corporation, respondent.

## OPINION OF THE COURT

Ross, J.

Before us for review are two appeals from two separate judgments, which resulted from a jury verdict, after a joint trial, of breach of contract actions. The issues raised, include whether the jury's interrogatory responses were inconsistent; was the New York City Educational Construction Fund (Fund), as a matter of law, entitled to judgment on its motion to dismiss the claims for indemnification made by plaintiff Mars Associates, Inc., and Normel Construction Corp., as joint venturers (Mars), in the action entitled *Mars v Fund;* did the trial court err in denying the motion of defendant Fund for separate trials; did the trial court err in denying the defendant Fund's request to submit an interrogatory to the jury, which would have requested them to determine whether plaintiff Mars' action against the Fund was barred by an 18-month contractual period of limitations; and, did the judgment entered in the action, entitled *Martin Mechanical Corporation (Martin) v Mars and Federal Insurance Company (Federal),* properly reflect the terms of the indemnification agreement between Mars and its subcontractor Martin?

Both the *Mars v Fund (Mars* action) and *Martin v Mars and Federal (Martin* action) actions arose out of the construction, on the site of the old 33rd Street Armory, of the school portion of a combined-occupancy structure, located between 33rd and 34th Streets on the east side of Park Avenue in New York County. The school portion of this structure is now known as Norman Thomas High School.

Pursuant to the provisions of article 10 of the New York State Education Law, the Fund was created in 1966, as a public benefit corporation, to facilitate the financing of the construction of elementary and secondary school buildings in the City of New York, as part of combined-occupancy structures.

A public benefit corporation is defined as "a corporation organized to construct or operate a public improvement wholly or partly within the state, the profits from which inure to the benefit of this or other states, or to the people thereof" (General Construction Law § 66 [4]).

By a written contract (Development Agreement), dated January 21, 1972, the Fund, the Board of Education of the City of New York (Board), and Three Park Avenue Co. (Three Park) entered into an agreement, to erect a reinforced concrete combined-occupancy structure on the site of the old 33rd Street Armory. According to the parties' plans, when completed, the resulting building would consist generally, in the lower part, of a nine-story high school (school portion), with, in the upper part, at least a 29-story office tower. Thereafter, the Fund obtained title to the project site from the City of New York. In accordance with the terms of the Development Agreement, the Fund, after its acquisition of the project site, leased the school portion to the Board, and the nonschool portion to Three Park.

Furthermore, although the Development Agreement provided that Three Park was obligated to develop and construct this combined-occupancy structure, Three Park was only the general contractor of the nonschool portion, since it was obligated and did assign, to Mars, the construction of the school portion.

By three written contracts, all dated January 19, 1973, Mars subcontracted with Martin Mechanical Corporation (Martin) to perform the mechanical work for the heating, ventilating and air conditioning; with A. I. Smith Co., Inc. (Smith), to perform the electrical work; and with S & M Plumbing Company, Inc. (S&M), to perform the plumbing and drainage work. Incidentally, Martin, in turn, subcontracted some of its work to General Sheet Metal Works, Inc. (General).

Demolition of the armory then occupying the site began on or about February 7, 1972. Three Park (and its assignee Mars) agreed, in section 309.1 of the Development Agreement, to

complete and make available for use "the school portion of the Project * * * within nine hundred (900) consecutive calendar days from * * * [the] commencement date [of the demolition]". Since demolition began on or about February 7, 1972, we will take judicial notice (Richardson, Evidence § 14 [Prince 10th ed]) of the fact that 900 consecutive days from that date was July 27, 1974. Section 323.2 of the Development Agreement provides that the Fund is entitled to liquidated damages for any delay in the completion of the school portion in "the sum of $500 for each and every calendar day that the time consumed in completing the School Portion exceeds the time allowed therefor".

Our examination of the record indicates that an executive of Mars testified that Mars did not complete the school portion by the required completion date. In fact, the Board did not begin using the school portion until some 426 days after the Mars promised completion date, when a temporary certificate of occupancy (TCO) was issued by the Department of Buildings.

Although the usual Statute of Limitations for actions arising from construction contracts is six years (Cowper Co. v Buffalo Hotel Dev. Venture, 115 AD2d 346, 347 [1985], lv dismissed 67 NY2d 605 [1986]; CPLR 213 [2]), CPLR 201 permits the parties to a written agreement to prescribe "a shorter time". A unanimous Court of Appeals held in Kassner & Co. v City of New York (46 NY2d 544, 550-551 [1979]) that: "The parties may cut back on the Statute of Limitations by agreeing that any suit must be commenced within a shorter period than is prescribed by law. Such an agreement does not conflict with public policy but, in fact, 'more effectively secures the end sought to be attained by the statute of limitations' (Ripley v Aetna Ins. Co., 30 NY 136, 163)". In section 332 of the Development Agreement, Three Park and Mars as Three Park's assignee, agreed that any action against the Fund would be barred, if it was commenced more than "eighteen (18) months after the date of completion of the work".

In July 1977, Mars commenced its instant action against the Fund. The amended complaint contains eight causes of action. The first and third causes of action seek damages for alleged unpaid, extracontractual work performed by Mars at the Fund's request, while the second cause of action seeks damages for alleged amounts due for change orders. The fourth cause of action claims damages, based upon delays allegedly caused by the Fund and the Board. In the remaining fifth

through eighth causes of action, Mars claims-over against the Fund for amounts that Mars alleges subcontractors Martin, Smith and S&M claimed against it, due to alleged delays in, and suspension of, the subcontractors' work.

Specifically, the sixth and seventh causes of action seek indemnification for damages sought against Mars by Martin, in an action, commenced in April 1977, entitled: *Martin v Mars and Federal (Martin* action). Moreover, the fifth and eighth causes of action are alleged to be brought by Mars "on behalf of" subcontractors Smith and S&M, respectively.

Sometime before instituting the *Mars* action, Mars had entered into settlement agreements with subcontractors Martin, Smith and S&M. Our examination of the settlement agreements indicate that they are nearly identical, since each agreement provides, in pertinent part, that Martin, Smith and S&M agree to accept in settlement of their respective claims against Mars, *whatever amount, if any, Mars is able to recover from the Fund.*

In its answer to Mars' complaint, the Fund, in substance, denied the allegations contained therein, asserted as a defense that the 18-month contractual limitations period set forth in the Development Agreement barred Mars' action, and, asserted a counterclaim. In substance, this counterclaim alleged that Mars was responsible for the delay in not completing the school portion by the date set forth in the Development Agreement, and, therefore, the Fund was entitled to liquidated damages *(see,* Development Agreement § 323.2) in the amount of $500 per day for the 426 days past the contract completion deadline of July 27, 1974, discussed *supra.*

Besides the *Mars* action and *Martin* action, a third related action was *General v Martin, Mars and Fund et al. (General* action). Martin, as mentioned *supra,* subcontracted to General the sheet metal work for the school portion. In substance, General brought its action to recover damages from the defendants, due to, *inter alia,* allegedly authorized extra and additional work, and job delays.

Before trial, Mars moved (CPLR 602 [a]) to consolidate for trial, the *Mars* and *Martin* actions.

CPLR 602 (a), states, in pertinent part: "[w]hen actions involving a common question of law or fact are pending before a court, the court, upon motion, may order a joint trial of any or all the matters in issue, may order the actions consolidated, and may make such other orders concerning proceedings

therein as may tend to avoid unnecessary costs or delay". This section setting forth the power of a court, upon motion, to consolidate and/or order a joint trial of actions, expresses the modern view of joinder as a means of eliminating multiplicity of actions, trial delay, and expenses of litigation. We have held that a motion to consolidate actions "is directed to the sound discretion of the court" *(Inspiration Enters. v Inland Credit Corp.,* 54 AD2d 839, 840 [1st Dept 1976]).

The Fund opposed Mars' motion to consolidate the *Mars* action with the *Martin* action. Pursuant to order, Supreme Court, New York County (Hilda Schwartz, J.), entered July 18, 1979, Special Term ordered a joint trial of the *Mars* and *Martin* actions, rather than consolidating them.

Although there are similarities between consolidating an action and ordering a joint trial of an action, there are also significant differences. On the one hand, with consolidation there is a total merger of the separate actions into one action. However, with the joinder of trials, each action remains independent of the other. In other words, as we stated in *Pigott v Field* (10 AD2d 99, 101 [1st Dept 1960]) "consolidation gives rise to a new action displacing the actions affected thereby, whereas a joint trial preserves the integrity of each of the actions". Thus, "[i]n consolidated actions only one judgment is entered, while in joint trials separate verdicts and judgments are entered and each may be appealed from" (2 Weinstein-Korn-Miller, NY Civ Prac ¶ 602.02, at 6-11).

Following the Mars' motion to consolidate, Martin moved to consolidate the *General* action, in which Martin was a defendant, with the *Mars* and *Martin* actions, so that the three actions could be tried together. Pursuant to order, Supreme Court, New York County (Beatrice Shainswit, J.), entered July 22, 1981, Special Term granted Martin's consolidation motion "only to the extent of directing a joint trial of the 3 actions".

Thereafter, on the eve of trial, the Fund moved for, *inter alia,* a severance and a separate trial of the *Mars* action from the other two actions, mentioned *supra.* Pursuant to order, Supreme Court, New York County (Bruce McM. Wright, J.), entered March 19, 1985, Trial Term denied that motion.

On March 19, 1985, a joint jury trial of the *Mars, Martin* and *General* actions commenced. However, since the *General* action was settled and dismissed soon after the trial began, actually the joint trial involved only the *Mars* and *Martin* actions.

Our examination of the more than 4,500 pages of the trial transcript indicates that the dispute between the parties boiled down to who caused the 426-day delay in finishing the school portion, beyond the contract completion date of July 27, 1974. Mars and its subcontractors—Martin, Smith and S&M— blamed the Fund, and presented evidence to support that position. The Fund contended that the delay resulted from, *inter alia,* problems caused by parties for whom the Fund was not responsible, e.g., developer Three Park, who changed the superstructure from reinforced steel to concrete, which required changes in the drawings; an alleged feud between Mars and subcontractor Martin; and, allegedly Mars and its subcontractors underestimated the complexity of building the combined-occupancy structure.

After summations, and the trial court's charge, the *Mars* and *Martin* actions were submitted to the jury on a single set of interrogatories. The jury's responses to these interrogatories appeared inconsistent, since they found in favor of the Fund on its counterclaim against Mars for $500 per day liquidated damages, in the amount of $213,000, while, at the same time they found the Fund responsible for the delays and damages caused to Mars and its subcontractors. Thereupon, Mars moved for a mistrial, and, although the Fund opposed the mistrial motion, it moved that the jury be instructed to clarify its responses. Without either granting Mars' motion for a mistrial, or further instructing the jury, as requested by the Fund, the trial court stated, in pertinent part, "I'm going to accept the jury verdict as it is. *I will find it is inconsistent and irreconcilable, and set it aside, and direct a new trial."* (Emphasis supplied.) However, after the jury was discharged, instead of setting the verdict aside, the trial court stated in a posttrial written decision, dated October 2, 1985, in pertinent part, "A close reading of the [jury responses to the interrogatories] indicates a theme of consistency and sensible figuring in arithmetic terms by the jury". As a result of finding the jury's responses to the interrogatories consistent, the trial court dismissed the Fund's counterclaim, and allowed judgments to be entered in the *Mars* and *Martin* actions.

First, the judgment in the *Mars* action, entered March 13, 1986, was in favor of Mars and against the Fund in the total amount of $3,050,914.14 ($1,915,622.55 in damages plus interest of $1,135,291.59). This damage award consisted of a recovery by Mars of $800,686.78 on its direct claims against the Fund, $756,977.55 on Mars' claim-over for claims of subcon-

tractor Martin, $270,668 and $87,290 for Mars' claims-over on behalf of Smith and S&M Plumbing, respectively.

Second, the judgment in the *Martin* action, entered April 1, 1986, was in favor of subcontractor Martin and against Mars in the total amount of $1,298,973.48 ($756,977.55 in damages plus interest of $541,995.93). However, the terms of this judgment stated that, by reason of the indemnification agreement between Martin and Mars, Martin would take no post-judgment or other procedures for enforcement of its claims and judgment against Mars, until and unless Mars collected under Mars' indemnification claim against the Fund.

The Fund appeals from the judgment in the *Mars* action, and Mars appeals from the judgment in the *Martin* action.

I THE FUND APPEAL

CPLR 4111, which is entitled: "General and special verdicts and written interrogatories", states, in pertinent part, in subdivision (c): "When the court requires the jury to return a general verdict, it may also require written answers to written interrogatories submitted to the jury upon one or more issues of fact * * * When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court shall direct the entry of judgment in accordance with the answers, notwithstanding the general verdict, or it shall require the jury to further consider its answers and verdict or it shall order a new trial. When the answers are inconsistent with each other and one or more is inconsistent with the general verdict, the court shall require the jury to further consider its answers and verdict or it shall order a new trial."

A unanimous Court of Appeals has unequivocally held, in *Marine Midland Bank v Russo* (50 NY2d 31, 40 [1980]) that, when a jury's responses to interrogatories "are inconsistent with one another and one or more conflicts with a general verdict", the trial court's only options are to either order reconsideration by the jury or a new trial.

Based upon our examination of the jury's answers to the interrogatories, we find them to be fatally inconsistent.

For example, although the jury, in its answers to interrogatories Nos. 1 and 2, found that the Fund had damaged Mars by unreasonably delaying Mars in the performance of its contractual obligations, the jury also, in its answers to interrogatories Nos. 17 and 18, found that Mars had delayed the completion of the school portion by 426 days, beyond the contract completion date. In connection with its finding that

Mars had been guilty of delay, the jury sent the following note to the trial court concerning the Fund's counterclaim: "Your Honor, we have reached a verdict, but have one final essential question. We assume that by our answer to question number one, that the Fund will be awarded its claim in full of $213,000. This is our wish unanimously."

Since the jury was instructed by the trial court that the Fund could not recover anything on its counterclaim, it if were found to have delayed Mars' contractual performance in any way, we find that the inconsistency in the jury's answers to interrogatories Nos. 1, 2, 17 and 18, discussed *supra,* cannot be resolved, when that inconsistency is "reviewed in the context of the court's charge" *(Lundgren v McColgin,* 96 AD2d 706 [1983]). In other words, it was obviously inconsistent for the jury to find in favor of the Fund on its counterclaim against Mars, and yet, at the same time, award Mars delay damages, upon the basis that the Fund caused Mars to be late.

Moreover, we find that the jury's responses to interrogatories Nos. 2-a, 3, 7, 11 and 15 were also inconsistent, in view of the fact that the jury's apportionment of each party's responsibility for the delay bears no relationship to the damages assessed by the jury. In answer to interrogatory No. 2-a, the jury found the parties' share of responsibility for delay, as follows: 35% against Mars; 20% against subcontractor Martin; 0% against subcontractors Smith and S&M; 25% against the Fund; and other causes—20%.

Although the jury found in interrogatory No. 2-a, discussed *supra,* that Mars, Martin and the Fund were each partially responsible for the delays, our examination of the record indicates that the jury did not apply those percentages of responsibility in determining the dollar amounts that the jury listed in their responses to interrogatories Nos. 3, 7, 11 and 15, which interrogatories sought the jury's assessment against the Fund of the amount of delay damages, if any, sustained by Mars and subcontractors Martin, Smith and S&M.

For example, in interrogatory No. 3, the jury found that Mars sustained damages of $800,000, due to delay. Since the $800,000 figure, which appears as the jury's answer to interrogatory No. 3, represents the jury's finding for the entire amount of delay damages actually sustained by Mars, then after applying the Fund's 25% share of responsibility, the maximum for which the Fund could be liable to Mars is $200,000. Thus, the jury's answer of $800,000 in interrogatory

No. 3, is inconsistent with the jury's answer to interrogatory No. 2-a that the Fund was 25% liable for delay.

In similar fashion, in interrogatory No. 7, the jury found Martin suffered damages of $750,000, as a result of unreasonable delay caused by the Fund. If the $750,000 figure, which appears in interrogatory No. 7, represents the jury's finding for the entire amount of delay damages actually sustained by Martin, then, after applying the Fund's 25% share of responsibility, the maximum for which the Fund could be liable to Martin is $187,500. Thus, the jury's answer of $750,000 in interrogatory No. 7 is inconsistent with the jury's answer to interrogatory No. 2-a that the Fund was 25% liable for delay.

Finally, the same inconsistency, as was pointed out *supra,* concerning the jury's assessment of Mars' and Martin's delay damages, is found in the jury's answers to the interrogatories concerning the delay damages of subcontractors Smith and S&M. In interrogatory No. 11, the jury found Smith suffered delay damages of $270,668, which was the full amount of Smith's claim. However, in view of the fact that the jury only found the Fund 25% liable, the jury could, at the maximum, have assessed against the Fund damages for Smith in the amount of $67,667 (note: 25% of $270,668 equals $67,667). Furthermore, in interrogatory No. 15, the jury found S&M suffered delay damages of $87,290, which was the full amount of S&M's claim, however, in view of the fact that the jury only found the Fund 25% liable, the jury could, at the maximum, have assessed against the Fund damages for S&M in the amount of $21,822.50 (note: 25% of $87,290 equals $21,822.50). Thus, the jury's answers to interrogatories 11 and 15 were inconsistent with the jury's answer to interrogatory No. 2-a that the Fund was 25% liable for delay.

In conclusion, we find overwhelming evidence, illustrations of which were discussed *supra,* of a pattern of inconsistency that permeated the jury's answers to the interrogatories, which required the trial court to have either ordered reconsideration by the jury or a new trial *(Marine Midland Bank v Russo, supra).* Since, as mentioned *supra,* the Fund timely moved, before the jury's discharge, for the trial court to further instruct the jury to clarify its answers to the interrogatories, and the trial court denied that relief, this issue has been properly preserved for review *(see, Barry v Manglass,* 55 NY2d 803, 806 [1981]; CPLR 4017, 5501 [a] [3]).

The trial court's decision to allow judgments to be entered is

apparently based on a single sentence, in its posttrial decision: "A close reading of the answers indicates a theme of consistency and sensible figuring in arithmetic terms by the jury".

We disagree. We find overwhelming evidence of inconsistency in the jury's answers to the interrogatories. We reiterate, when a trial court has been asked to resubmit inconsistent answers of a jury to interrogatories, and which answers to interrogatories were also inconsistent with the general verdict, the trial court only has the power to either ask the jury to further consider its answers and verdict, or order a new trial (CPLR 4111 [c]; *Marine Midland Bank v Russo*, 50 NY2d 31, *supra);* and, it is error for a trial court to itself attempt "to adjust the outcome of the litigation" *(Vathy v Rupp Rental Corp.,* 43 AD2d 892, 893 [1974]; *also see in this connection, Hernandez v Levine,* 90 AD2d 481 [1982], in which case, a trial court, instead of taking the mandated action, was held to have erred when it "speculated as to what was in the minds of the jurors"). Based upon the trial court's failure to comply with CPLR 4111 (c), we find that it erred, and, therefore, we reverse, vacate the judgment and remand for a new trial.

■ ■ Besides the meritorious argument of the Fund concerning the trial court's erroneous response to the inconsistent answers of the jury to interrogatories, we find that the Fund has also raised two other issues that have merit.

Immediately before the joint trial of the *Mars, Martin* and *General* actions was to begin, the Fund moved for an order: (a) pursuant to CPLR 3211 (a) (7), or, CPLR 3212, dismissing the fifth through eighth causes of action contained in the amended complaint of the *Mars* action for failure to state a cause of action; and (b) pursuant to CPLR 603, granting a separate trial of the *Mars* action.

As mentioned earlier, causes of action five through eight of the Mars' amended complaint sought indemnification from the Fund for damages allegedly sustained by subcontractors Martin, Smith and S&M of Mars, as a result of alleged delays in, and suspensions of, the performance of their subcontractor work.

In respect to that part of the motion that sought a severance, the Fund contended, in substance, that the *Mars* action should be tried separately from the *Martin* and *General* actions, in order to avoid prejudice to the Fund. Furthermore, the Fund noted that it was not a party to the *Martin* action.

Trial Term denied, in an order entered March 19, 1985, the Fund's motion in its entirety. This order has not been separately appealed. Thereafter, during the course of the joint trial, the Fund moved for the relief contained in its pretrial motion discussed *supra,* and those motions were also denied.

It is undisputed that the Fund timely appealed the judgment in the *Mars* action, entered March 13, 1986.

■ CPLR 5501, entitled: "Scope of review", provides in subdivision (a) (1), in pertinent part: "An appeal from a final judgment brings up for review * * * any non-final * * * order which necessarily affects the final judgment". In view of the fact that the granting of the Fund's motion in its entirety "would strike at the foundation on which the final judgment was predicated" *(Matter of Aho,* 39 NY2d 241, 248 [1976]), since there would have been a separate trial of the Mars complaint, without the indemnification causes of action, we find that the subject order, entered March 19, 1985, necessarily affected the final judgment, and, therefore, is properly before us for review *(see, Foley v Roche,* 68 AD2d 558, 564-565 [1st Dept 1979]). Further, these two issues were raised at the trial, now before us on appeal.

As mentioned *supra,* subcontractors Martin, Smith and S&M claimed that Mars owed them additional moneys, and, therefore, in causes of action five through eight of its amended complaint, Mars "claimed-over" against the Fund, alleging that the Fund was liable to indemnify Mars for whatever sums Mars had to pay these subcontractors on their claims.

■ Since Mars has not yet paid those claims, we find that the causes of action pertaining to them are and will continue to be premature until Mars makes such payments. A unanimous Court of Appeals held in *McDermott v City of New York* (50 NY2d 211, 216 [1980]) a cause of action "for indemnification [does] not accrue until payment [is] made to the [claimant]".

An exception to this rule, that until payment is made to the claimant there is no cause of action for indemnification, arises where indemnification is asserted in a third-party action. The reason for this exception is set forth in *Burgundy Basin Inn v Watkins Glen Grand Prix Corp.,* 51 AD2d 140, 146) as follows: "Technically a claim for indemnity does not arise until the prime obligation to pay has been established *(Matter of Valstrey Serv. Corp. v Board of Elections,* 2 NY2d 413, 415; 28 NY Jur, Indemnity, §§ 2, 20, 27; see, also, *McCabe v Queensboro*

*Farm Prods.,* 22 NY2d 204). Nevertheless, for the sake of fairness and judicial economy, the CPLR allows third-party actions to be commenced in certain circumstances before they are technically ripe, so that all parties may establish their rights and liabilities in one action (e.g., *Krause v American Guar. & Liab. Ins. Co.,* 27 AD2d 353, 355, affd 22 NY2d 147, 152-153; *Matter of Valstrey Serv. Corp. v Board of Elections, supra,* p 416; see 28 NY Jur, Indemnity, § 27)''.

This exception to the general rule has no relevance to the instant action, since Mars has not seen fit to implead the Fund in the *Martin* action, as a third-party defendant. When ''[t]he record reveals that plaintiff's claim for damages it may sustain is premature * * * [such claim should be] determined by way of a third-party action'' *(Republic Ins. Co. v Northern Aire Dev.,* 88 AD2d 973, 974 [1982]).

We have entertained claims without prior payment only where the party seeking indemnification was bringing a claim ''on behalf of'' another party, pursuant to a liquidation agreement, which contained an admission of liability by the party to the original claimant and provided that the amount of the payment would be the amount, if any, subsequently collected by the party seeking indemnification *(see, Ardsley Constr. Co. v Port of N. Y. Auth.,* 61 AD2d 953, 954 [1st Dept 1978]; *Lambert Houses Redevelopment Co. v HRH Equity Corp.,* 117 AD2d 227, 230-231 [1st Dept 1986]). However, our examination of the record indicates that Mars has never admitted its liability to subcontractors Smith and S&M in Mars' liquidation agreements with them, which agreements provide that these two subcontractors agree to accept in satisfaction of their claims against Mars, whatever sum, if any, Mars is able to recover from the Fund. Furthermore, although Mars seeks indemnification for Martin's claims in causes of action six and seven of its amended complaint, Mars is not bringing any claims ''on behalf'' of Martin, in view of the fact Martin presented these same claims in the separate *Martin* action by its own attorney. Since Mars did not admit its liability to subcontractors Smith and S&M, and since Mars is not bringing the claims ''on behalf'' of Martin, the principle expressed in the cases of *Ardsley Constr. Co. v Port of N. Y. Auth. (supra)* and *Lambert Houses Redevelopment Co. v HRH Equity Corp. (supra)* is inapplicable here.

Upon the basis of the facts and legal authority cited *supra,* we find that Trial Term erred in its order of March 19, 1985, *supra,* when it denied the fund's motion to dismiss indemnifi-

cation causes of action five through eight of Mars' amended complaint, and we reverse and grant that motion.

Now, we turn to the Fund's argument that it was prejudiced by the joint trials of the *Mars* and *Martin* actions.

Although, as we discussed *supra*, there are certain benefits to be gained by joint trials, those benefits are outweighed when a party would be unduly prejudiced by a joint trial *(Wallach Agency v Bank of New York*, 75 AD2d 878 [1980]; *Fashion Tanning Co. v D'Errico & Farhart Agency*, 105 AD2d 1034 [1984])*. The party claiming the prejudice, has "[t]he burden of showing prejudice to a substantial right" *(Maigur v Saratogian, Inc.*, 47 AD2d 982, 983 [1975]; *see also, Orange v Swiftways Supermarkets*, 32 AD2d 631 [1st Dept 1969])*.

After close examination of the record, we find that the Fund has meritoriously met its burden of proving that it was prejudiced by the joint trials of the *Mars* and *Martin* actions, and that there should have been a separate trial of each one of those actions. The following are some examples of how the Fund was prejudiced by the joint trial:

The *Martin* action against Mars was a "sham action", in which Martin and Mars had no adverse interests, or contrary positions. Our conclusion that this was a "sham action" is based upon our examination of the settlement agreement between them, which indicates that Martin settled its claim against Mars for any sum Mars obtained from the Fund concerning Martin's alleged damages.

We find that, the effect of allowing this "sham action" of Martin's to be tried jointly with the *Mars* action, in substance, permitted Mars to have double representation throughout the trial. Thus, Mars and Martin were each allowed to separately participate in the selection of the jury, challenge potential jurors, make opening statements, examine each witness, conduct sham cross-examinations of each other's witnesses, make closing arguments, object to the admissibility of documents presented by the Fund, and otherwise, fully participate in the action against the Fund. Needless to say, such double representation, in this jury trial, gave an unfair advantage to Mars and Martin over the Fund, since they were able to, *inter alia*, divide their objections, arguments, examinations of witnesses, etc., in such a way as to have the greatest possible effect on the jury. In other words, Mars, in effect, had two opportunities to prove its position, giving it an unfair advantage over its adversary *(see, for example, Meleo v Rochester Gas & Elec. Corp.*, 72 AD2d 83 [1979], *lv dismissed* 49 NY2d 797 [1980])*.

Accordingly, we find that Trial Term abused its discretion in its order of March 19, 1985, mentioned *supra,* when it denied the Fund's motion for a separate trial, and we reverse and grant that motion *(Wallach Agency v Bank of New York, supra).*

Further, the Fund contends that the *Mars* action is barred by the 18-month contractual period of limitations, which appears, as mentioned *supra,* in section 332 of the Development Agreement, and reads, in pertinent part, as follows: "no action * * * shall lie or be maintained by Developer, [or] its assignees [Mars] * * * unless such action * * * shall commence within eighteen (18) months after the date of completion of the work".

During trial, the Fund requested that the trial court submit to the jury an interrogatory asking whether the *Mars* action, which was commenced on July 28, 1977, was barred by the contract, since the Fund alleged that Mars had, in substance, completed its work by September 25, 1975, when the Board received the TCO, and started using the school. The trial court rejected the Fund's request, and decided as a matter of law *(Williams Press v State of New York,* 37 NY2d 434, 439-440 [1975]) that Mars had timely started its action.

■ We agree. Our review of the record indicates to us that there was no issue to submit to the jury, since, *inter alia,* the Fund itself did not consider that Mars had completed its work, even as late as August 11, 1976, which date was well within the contractual period of limitations. By letter, dated August 11, 1976, the Fund's director of design and construction advised Mars, in pertinent part:

"We note your comment that the one-year guarantee period relative to this project has expired so far as you as general contractor is *[sic]* concerned, and your request for release of the balance of moneys under the Development Agreement.

"We direct your attention, in particular, to the provisions of Sections 325, 328, 329 and 331 of the Development Agreement. There still remains a substantial amount of uncompleted work, including, but not limited to, punch list work, general construction work, mechanical work and a misfunctioning electrical system.

"Please be advised that your request for release of the balance of the moneys will be considered when your work upon this project has been satisfactorily completed."

We have reviewed the remainder of the Fund's contentions of error, and find them to be without merit.

## II THE MARS APPEAL

The sole issue raised by Mars in its appeal from the judgment in the *Martin* action is that the trial court's language limiting Mars' liability to Martin is insufficient. In pertinent part, the challenged portion of the judgment reads, as follows: "that by reason of an indemnification agreement between Mars-Normel and Martin Mechanical Corporation, Martin Mechanical shall take no post-judgment or other procedures for enforcement of its claims and judgment against Mars Associates, Inc. and Normel Construction Corp., until and unless Mars Associates, Inc. and Normel Construction Corp., as joint venturers, have collected under their indemnification claim against New York City Educational Construction Fund."

Although we find that this language, quoted *supra,* reflects the terms of the Mars' indemnification agreement with Martin, we are compelled to reverse, vacate the *Martin* judgment, and remand the *Martin* action for a new trial, upon the basis of the inconsistent jury responses to the interrogatories, discussed *supra.*

Accordingly:

(1) judgment in *Mars Associates, Inc. and Normel Construction Corp., as Joint Venturers v New York City Educational Construction Fund* (index No. 14550/1977, Sup Ct, NY County [Bruce McM. Wright, J., and a jury]), entered March 13, 1986, is unanimously reversed, on the law and on the facts, judgment vacated, and a new trial ordered, without costs.

(2) judgment in *Martin Mechanical Corporation v Mars Associates, Inc. and Normel Construction Corp., A Joint Venture, and Federal Insurance Company* (index No. 945/1980, Sup Ct, NY County [Bruce McM. Wright, J., and a jury]), entered April 1, 1986, unanimously reversed, on the law and on the facts, judgment vacated, and a new trial ordered, without costs; and

(3) order in *Mars Associates, Inc. and Normel Construction Corp., as Joint Venturers v New York City Educational Construction Fund (Mars* action) (index No. 14550/1977, Sup Ct, NY County [Bruce McM. Wright, J.]), entered March 19, 1985, which denied defendant's motion to dismiss causes of action five, six, seven and eight of the amended complaint, and for a separate trial of this *Mars* action, unanimously reversed, on the law, on the facts, and in the exercise of discretion, the motion is granted, causes of action five, six, seven and eight are dismissed from the amended complaint in the *Mars* action,

and a separate trial of the *Mars* action is directed, without costs. This order (Sup Ct, NY County [Bruce McM. Wright, J.]), entered March 19, 1985, was brought up for review, pursuant to CPLR 5501 (a) (1), since this order necessarily affects the final judgments, entered March 13, 1986 and April 1, 1986, respectively, in the cases of *Mars Associates, Inc. and Normel Construction Corp., as Joint Venturers v New York City Educational Construction Fund* (index No. 14550/1977) and *Martin Mechanical Corporation v Mars Associates, Inc. and Normel Construction Corp., A Joint Venture, and Federal Insurance Company* (index No. 945/1980).

KUPFERMAN, J. P., MILONAS, KASSAL and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered on March 19, 1985, unanimously reversed, on the law, on the facts, and in the exercise of discretion, the motion granted, causes of action five, six, seven and eight dismissed from the amended complaint in the *Mars* action, and a separate trial of the *Mars* action directed, without costs and without disbursements; and the judgment of said court, entered on March 13, 1986, is unanimously reversed, on the law and on the facts, the judgment vacated, and a new trial ordered, without costs and without disbursements; and judgment of said court entered on April 1, 1986, unanimously reversed, on the law and on the facts, the judgment vacated, and a new trial ordered, without costs and without disbursements.