**In re AMFESCO INDUSTRIES, INC., et al., Debtors.**

Bankruptcy Nos. 185–51931–352 to 185–51937–352.

United States Bankruptcy Court, E.D. New York.

Jan. 27, 1988.

Levin & Weintraub & Crames, New York City by Barry N. Seidel, for Debtors.

Stroock & Stroock & Lavan, New York City by Andrew DeNatale, for David Greenblatt, Roy Greenblatt, Michael Greenblatt, Erie Weil, Joseph Kantrowitz, John Hurley and Joseph Nurnberg.

Hahn & Hessen, New York City by George A. Hahn, for the Official Secured Creditors' Committee.

Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, New York City by Wayne Greenwald, for the Official Equity Security Holders' Committee.

Schwartz & Schlacter, New York City by S.J. Silberberg, for the Official General Unsecured Creditors' Committee.

OPINION

MARVIN A. HOLLAND, Bankruptcy Judge:

By application dated August 13, 1987, present and former directors of the Debtors seek to have the Debtors pay, as an expense of administration, pursuant to 11 U.S.C. § 503(b)(1)(A), legal expenses incurred in connection with threatened litigation against them in their capacities as directors and officers of the Debtors. The Secured Creditors' Committee and the Equity Security Holders' Committee object on the grounds that:

a) Applicants' claim against the Debtors for indemnification is a pre-petition claim not entitled to administrative priority pursuant to 11 U.S.C. § 503; but rather is at most a general unsecured claim;

b) the Debtors have at least twenty million dollars ($20,000,000) of insurance covering the cost of defending its directors and officers if and when a proceeding is brought against them.

*Statement of Jurisdiction*

This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 157(a). This action is a core proceeding as defined pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

*Statement of Facts*

By application dated August 13, 1987, David Greenblatt, Roy Greenblatt, Michael Greenblatt, Eric Weil, Joseph Kantrowitz, John Hurley and Joseph Nurnberg (hereinafter the "Applicants") move for an order authorizing Amfesco Industries, Inc., et al. (hereinafter the "Debtors") to reimburse the Applicants in connection with the threatened litigation by Banco Popular de Puerto Rico (hereinafter the "Bank"), an unsecured creditor of the Debtors, as an administrative expense. The application is opposed by both the Official Secured Creditors' Committee (hereinafter the "Secured Committee") and the Official Equity Security Holders' Committee (hereinafter the "Equity Committee").

On November 19, 1985, Amfesco Industries, Inc. and each of its subsidiaries (Amjet Industries, Inc., American Felt Slipper, Inc., Domjet Industries, Inc., Domfesco Industries, Inc., AFS Sportshoes, Inc., and Amfesco–Duramil Division, Inc.) filed voluntary petitions for relief under Chapter 11, § 301 of the Bankruptcy Code (hereinafter the "Code"). The Debtors have continued to possess and to manage their businesses and property pursuant to §§ 1107 and 1108 of the Code. The cases were consolidated for procedural purposes and are being jointly administered.

David Greenblatt is presently Chairman of the Board and President of the Debtors. Roy Greenblatt is a Vice–President and a Director of the Debtors. Michael Greenblatt is Treasurer and a Director of the Debtors. John Hurley is a Director of the Debtors. Joseph Nurnberg is Secretary, General Counsel and a Director of the Debtors. Joseph Kantrowitz, formerly Chief Financial Officer and a Director of the Debtors resigned his positions subsequent to the filing of the bankruptcy petition. Eric Weil, formerly a Vice–President and a Director of the Debtors, also resigned his position after the petition was filed.

By letter dated July 15, 1987 the Bank, by its counsel, Caplin & Drysdale, informed the Applicants that it believed it had a meritorious claim against them as officers and directors of the Debtors for negligence and fraud in financial reporting and offered the Applicants an opportunity to bring to its attention any information the Applicants believed necessary to assist in a final determination of whether or not to initiate litigation. The Bank outlined its desire not to proceed with litigation unless warranted, and offered to negotiate conditioned upon an agreement suspending the statute of limitations for a period of 60 days.

By letter dated August 7, 1987, the Applicants, by their counsel, agreed to toll the statute of limitations for a period of 60 days commencing July 15, 1987 (as proposed by the Bank in its letter of July 15,

1987) so that the parties might pursue further settlement discussions.

The Applicants have retained the law firm of Stroock & Stroock & Lavan (hereinafter "Stroock") to represent them in resolving any disputes associated with the Bank. The Applicants have obligated themselves to pay Stroock monthly whether or not the court grants them relief.

The Restated Certificate of Incorporation of the Debtors includes a provision requiring such indemnification. Pursuant thereto, in order to provide the directors and officers with extended indemnification coverage, the Debtors obtained directors and officers liability and corporate reimbursement insurance from National Union Fire Insurance Company of Pittsburgh, Pennsylvania (hereinafter "National Union") on or about March 19, 1983, covering the period commencing March 19, 1983 through and including March 19, 1986.[1]

The Applicants contend that the indemnification provision in the Debtors' Restated Certificate of Incorporation requires the indemnification of directors and officers for all legal expenses incurred as a result of their corporate activities if they "acted, in good faith, for a purpose which he reasonably believed to be in the best interest of the Corporation." [2]

The Applicants point out that § 723(c) of the Business Corporation Law authorizes payment by a corporation of expenses incurred in defending a civil proceeding in advance of the final disposition of the case and maintain that since they behaved in accordance with the applicable standard of care set forth in the Business Corporation Law, there is no cause for them to be denied reimbursement for legal costs and liability, if incurred. Further, they maintain that applicable case law supports this type of application where the directors'

1. Prior to the expiration of the policy, the Debtors unsuccessfully attempted to renew the original directors and officers insurance policy. The policy, however, provided for the Debtors to receive "extended coverage" on their policy in the event National Union failed to renew the original directors and officers insurance policy. On or about March 13, 1986, the Debtors gave written notice to National Union of their election to purchase extended coverage, along with a check for $6735.00 representing twenty-five percent (25%) of the premium for the extended coverage on the policy payable to National Union. Thereafter, National Union refused to accept the extended coverage premium and the Debtors, by their counsel, commenced an adversary proceeding in this court (Adversary Proceeding No. 186–0113–352). The proceeding against National Union requested declaratory judgment asserting, *inter alia*, that the original director and officer insurance policy is in full force and effect with respect to the extended coverage. To alleviate both counsels' concerns over protracted litigation regarding this matter, which would have inevitably resulted in a financial strain to the Debtors' estate, the Debtors and National Union reached a settlement regarding the adversary proceeding. Essentially, the settlement provided that the parties would not seek a judicial determination as to whether the Debtors were entitled to extended coverage by reason of National Union's failure to renew the original director and officer insurance policy, and that all parties have agreed that any claims made against the Debtors or their officers arising out of any "financial loss claim" (as defined in the letter agreement) shall be deemed made prior to the expiration of the base policy

period. The Debtors' counsel claims that inasmuch as National Union has agreed to treat financial loss claims as arising during the base policy period, there is no need for the extended coverage and in effect the Debtors will be obtaining the same coverage they had hoped to obtain through the extended coverage. *See* Debtors' application regarding order approving settlement of adversary proceeding commenced against National Union Fire Insurance Company of Pittsburgh, Pa., at 4–6. The order approving this settlement was signed by the undersigned on February 13, 1987.

2. The Certificate provides, *inter alia*, that:

The Corporation shall indemnify each person made, or threatened to be made, a party to an action or proceeding, ..., by reason of the fact that he, ... was a director or officer of the Corporation, ... against judgments, fines, amounts paid in settlement and reasonable expenses, including attorneys' fees actually and necessarily incurred as a result of such action or proceedings, ..., if such director or officer acted, in good faith, for a purpose which he reasonably believed to be in the best interest of the Corporation ..., to the maximum extent that is permitted by and is consistent with the Business Corporation Law.... The foregoing indemnification provisions shall be in addition to, and not in limitation of, any rights to indemnification which any director or officer or former director or officer of the Corporation, ... may have under the Business Corporation Law, as presently in effect or as hereafter amended from time to time, or otherwise.

continued services are crucial to the Debtors' reorganizational efforts, claiming that their services are crucial to the success and confirmation of an about-to-be-filed reorganization plan because of their unique ability to facilitate transition to new management which desires to continue employment of some of them. Therefore, they assert, unless funds are advanced now, some or all of them may resign their current positions with the Debtors, thus hampering reorganizational efforts.

The Secured Committee and Equity Committee have objected to the Applicants' motion for advancement of funds contending that:

A) The Applicants' request is premature. The Bank has not yet commenced a suit against the Applicants, nor is one imminent in view of the tolling agreement.

B) The Applicants have failed to cite any sections of the Code authorizing such advancement.

C) Since the activities which form the basis of the Bank's claim occurred pre-petition, their claim is not entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(1)(A).

The Secured Committee acknowledges that advancement of expenses on a priority basis may be warranted where they are necessary to a successful reorganization plan. However, they argue that the facts do not warrant such a finding.

The Equity Committee objects on two additional grounds:

A) The motion should be denied as to Joseph Kantrowitz and Eric Weil since they are former officers and directors who no longer actively participate in the day-to-day operations of the Debtors and whose future participation cannot impact upon the Debtor's reorganization.

B) The Debtors' liability insurance policy covers the alleged liability of the Debtor to the Applicants with regard to the claim of the Bank.

## STATEMENT OF ISSUES

The issues presented in this proceeding are:

a) Whether the officers and directors have a "claim" against the Debtors as defined in 11 U.S.C. § 101(4);

b) If they do, the extent to which it may be entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(1)(A).

## DISCUSSION

■ Under state law officers and directors lawfully acting as agents on behalf of their corporate principals are entitled to serve at no risk of personal expense or liability absent a breach of fiduciary duty. Bankruptcy law, however, mandates equality of distribution absent a compelling justification for a different result. *In re Braniff Airways, Inc.*, 42 B.R. 443, 448 (Bankr. N.D.Tex.1984); *See e.g. Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 219, 61 S.Ct. 904, 907, 85 L.Ed. 1293 (1941). To the extent that the granting of an administrative priority depletes the fund otherwise available to general unsecured creditors, there appears to be a conflict of policies.

■ Since any discussion of administrative priority assumes the existence of a claim, a brief discussion of the movants' status as claimants is appropriate. In New York, the general rule is that a cause of action for indemnity does not accrue until payment has been made by the party seeking indemnity. *Peoples' Democratic Republic of Yemen v. Good Pasture, Inc.*, 782 F.2d 346 (2d Cir.1986) (where the Court of Appeals held under New York law that a cause of action for indemnity accrues on the date payment is made by the party seeking indemnity); *Mars Assoc. v. N.Y. City Education Construction Fund*, 126 A.D.2d 178, 513 N.Y.S.2d 125 (1st Dept. 1987) *citing to McDermott v. City of N.Y.*, 50 N.Y.2d 211, 216, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980); *Alside Inc. v. Spancrete Northeast, Inc.*, 84 A.D.2d 616, 444 N.Y.S.2d 241 (1981). This rule may be modified, however, by a clear contractual expression providing for indemnification at some other time. *See Pennsylvania General Insurance Co. v. Austin Powder Co.*,

68 N.Y.2d 465, 510 N.Y.S.2d 67, 502 N.E.2d 982 (1986).

Section 101(4) defines "claim" as—

A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured or—

B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payments whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured. 11 U.S.C. § 101(4). Applicants' state law cause of action for indemnification, being a present contingent right to future payment, is definable as an unmatured, contingent right to payment under § 101(4).

Contingent means "likely but not certain to happen." Webster's New Collegiate Dictionary 243 (1979). A contingent claim is therefore one in which some of the elements necessary to constitute a cause of action have not occurred, but are likely to occur in the not too distant future. Since 11 U.S.C. § 101(4) includes "claims" which are contingent, denial of a claim on the ground that one or more elements of a cause of action have yet to occur would render that portion of § 101(4) self-contradictory, meaningless, and inoperative. Such a construction is to be eschewed in favor of one which is in in accord with the underlying purpose of the statute. *Allen Oil Co., Inc. v. C.I.R.*, 614 F.2d 336, 339 (2d Cir.1980); *United States v. Blasius*, 397 F.2d 203, 207 (2d Cir.1968), *cert. dismissed*, 393 U.S. 1008, 89 S.Ct. 615, 21 L.Ed.2d 557 (1969). It is incumbent upon this court "to find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes

that Congress manifested." *C.I.R. v. Engle*, 464 U.S. 206, 216, 104 S.Ct. 597, 604, 78 L.Ed.2d 420 (1984) (quoting *NLRB v. Lion Oil Co.*, 352 U.S. 282, 297, 77 S.Ct. 330, 338, 1 L.Ed.2d 331 (1957)) (Frankfurter, J., concurring in part and dissenting in part).

■ Therefore, even though some of the elements necessary to constitute a cause of action have yet to occur, a "claim" may exist under federal bankruptcy law provided there is a reasonable likelihood that there will occur within a reasonable time in the future those elements necessary to constitute a cause of action.

The Applicants seem to imply that since their entitlement to indemnification from the Debtors first arose post-petition, and since they are rendering beneficial services to the Debtors post-petition, any "claim" for indemnification as provided for in the Restated Certificate of Incorporation or under applicable state law will not have matured until after the filing of the petition, thereby creating post-petition priority for their legal costs. This argument assumes that the date when an indemnification action first could have been brought fixes the date upon which a bankruptcy "claim" arose for the purpose of determining the priority status of their indemnification claim. *See e.g. In re Mark Jay Kaufman, P.A.*, 78 B.R. 309 (Bankr.N.D.Fla.1987) (the court concluded the automatic stay applicable to a state court action in which the contractual relationship and purported tortuous inteference with same occurred pre-petition while actual damages giving rise to the cause of action did not accrue until post-petition).

The Applicants seem to be making the arguments set forth in *In re Frenville*, 744 F.2d 332 (3d Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), without actually citing to that court.[3] In *Frenville*, prior to the filing of

---

3. The *Frenville* court acknowledged that the definition of claim under § 101(4) as intended by Congress is to be given a broad and all-encompassing meaning. However, the court's focus on the "right to payment" as defined by applicable state law limits the definition of a claim to be a matured right to payment under § 101(4) and is therefore inapposite to the meaning of

"claim" intended by Congress. The question of whether a claim exists should ultimately be determined under federal bankruptcy law. Furthermore, other courts and commentators that deciding these same issues have criticized the analysis of *Frenville*. *See In re Edge*, 60 B.R. 690, 704 (Bankr.N.D.Tenn.1986) (the court refuses to adopt *Frenville* in that it "confuses the

the bankruptcy petition, an accounting firm prepared the Debtor's audited financial statements which allegedly contained misrepresentations. The Debtor's bank creditors sued the accounting firm for preparing the financial statements in a negligent and fraudulent manner. The accounting firm then sought relief from the § 362 automatic stay to implead the debtor as a third party defendant on contribution and indemnification grounds. The bankruptcy court held that the automatic stay provision of § 362(a) was applicable to the accounting firm's suit because the debtor's liability, if any, resulted from its pre-petition acts. The district court affirmed the bankruptcy court's order providing that the automatic stay barred the accounting firm's action for contribution or indemnification. The Court of Appeals reversed. Although recognizing the broad concept of "claim" under § 101(4), the court concluded that:

\*　　\*　　\*　　\*　　\*　　\*

In the case at bar, A & B had an *unmatured, unliquidated, disputed claim* when the banks brought suit against it in New York state court. Until the banks instituted suit, however, A & B did not have any claim or cause of action based on indemnity or contribution against the Frenvilles.... Although arguably A & B may have had some claim at the time the Frenvilles gave it allegedly false information, it did not have a claim for indemnification or contribution until the banks filed suit. Thus, by its very terms, the automatic stay provisions of § 362 are inapplicable to A & B's suit. 774 F.2d at 337 (emphasis added).

While the cause of action in *Frenville* may not have matured under state law until *after* the petition was filed, its claim for bankruptcy purposes arose *before* the petition is filed. This is so because a "right to payment" under the definition of

"claim" includes obligations which are neither matured, nor liquidated, nor fixed. *See In re Christian Life Center*, 821 F.2d 1370, 1374 (9th Cir.1987) (which implicitly declined to follow the *Frenville* analysis by concluding that "[i]t makes no difference that the duty to indemnify Argue [a corporate officer] for litigation expenses, if such duty exists, did not accrue until after the petition was filed when Argue incurred those expenses; the critical fact is that the claim for indemnity arose from pre-petition services Argue provided the corporation."); *In re Frenville: A Critique by the National Bankruptcy Conference's Committee on Claims and Distribution*, 42 The Business Lawyer 699, 705–07 May 1987 (in which the National Bankruptcy Conference is on record as believing *Frenville* was wrongfully decided). The National Bankruptcy Conference Committee cites to *In re A.H. Robins, Co.*, 63 B.R. 986 at 992, where the court states "[t]o follow *Frenville* and apply state law would be to confuse a 'right to payment' for federal bankruptcy purposes with the accrual of a cause of action for state law purposes...." The application of state law to determine a "claim" for federal bankruptcy purposes undermines the bankruptcy policy of the debtor's "fresh start." If the cause of action under state law does not accrue pre-petition, it need not necessarily follow that a claim for bankruptcy purposes does not accrue pre-petition as well. The *Frenville* decision would replace the federal definition of "claim" as found in § 101(4) with the narrower state concept of "cause of action" in order to maintain the state policy of indemnifying corporate officers at the expense of the federal policy of equality of distribution.

To the extent that the *Frenville* court fails to differentiate between a claim under federal bankruptcy law and a cause of action under state law, we believe that the

existence of a present right of action or access to the court with the existence of a "claim" for bankruptcy purposes."); *In re Yanks,* 49 B.R. 56, 58 (Bankr.S.D.Fla.1985) (where the court chose not to follow the *Frenville* analysis since it "would leave to the vagaries of the timing of events by third parties such obviously crucial issues of bankruptcy relief as priorities of distri-

bution and dischargeability of obligations."); *In re Johns–Manville Corp.,* 57 B.R. 680, 688 (Bankr.S.D.N.Y.1986) (Lifland, C.J.) (in which the court states *"Frenville* with a strained, narrow analysis limits by judicial fiat a broad, legislatively-mandated definition of the term 'claim'.").

Court of Appeals for this Circuit would decline to follow it.

Legislative history confirms that Congress intended the broadest possible definition of "claim" in bankruptcy. The House and Senate Reports explain that this broad definition of "claim" will further one of the underlying goals of bankruptcy law, to wit, the concept of the debtor's fresh start. Congress, through enactment of the Bankruptcy Code, "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." H.R. Rep. No. 595, 95th Cong., 1st Sess. 309 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6266; S.Rep. No. 989, 95th Cong., 2d Sess. 22, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5808. The Supreme Court has acknowledged this Congressional intention by observing that "it is apparent that Congress desired a broad definition of a "claim" and knew how to limit the application ... when it desired to do so." *Ohio v. Kovacs,* 469 U.S. 274, 279, 105 S.Ct. 705, 709, 83 L.Ed.2d 649 (1985); *see* 2 R. Levin & K. Klee, *Collier on Bankruptcy,* ¶¶ 101–04, 101–16.4 (15th ed. 1984).

In keeping with Congressional intent of giving the debtor a fresh start, coupled with the underlying legislative history of what constitutes a "claim," this court concludes that the Applicants have a "claim" as defined pursuant to 11 U.S.C. § 101(4), and the "claim" is capable of reasonable estimation when necessary.

## II. *Administrative Expense Priority*

The Applicants further urge that their claim for indemnification should be granted administrative priority because they fall within the requirements of 11 U.S.C. § 503(b)(1)(A) which grants first priority to administrative expenses allowed under section 507 of the same title. Section 503(b)(1)(A) defines administrative expenses as "the actual, necessary costs and expenses of preserving the estate, including wages, salaries or commissions for services rendered after the commencement of the case." Since this provision defining administrative expenses is derived from a similar provision of the Act, judicial interpretation of that section of the Act is relevant to interpretation of the corresponding Code section.[4] Section 64(a) of the Act provided that:

The debts to have priority in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition.

The policies underlying § 64(a)(1) are not hard to discern. Prospective creditors, post-petition, must be given incentive to transact business with the debtor without fear or risk. This incentive is provided by granting priority status to those creditors who advance credit to the debtor-in-possession. Thus "[w]hen third parties are induced to supply goods or services to the debtor-in-possession ... the purpose of § 64(a)(1) plainly requires that their claims be afforded priority." *In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir.1976).

Section 503(b)(1)(A) of the Code is derived mainly from § 64(a)(1) of the Act. Both sections accord the same priority status to those actual, necessary costs and expenses of preserving the estate. The purposes underlying § 503(b)(1)(A) are similar to those upon which § 64(a)(1) of the Act was predicated. Preservation of the

---

**4.** The Act had given administrative expenses priority status. Bankruptcy Act § 64(a)(1); 11 U.S.C. § 104(a)(1). 11 U.S.C. § 503(b)(1)(A) is derived from § 64(a)(1), Senate Report (Judiciary Committee) No. 95–989, July 14, 1978, 66 *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5852; House Report (Judiciary Committee) No. 95–595, Sept. 8, 1977, 355 *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6311. Since case law construing the old Bankruptcy Act should be followed in interpreting changes under the Code where the relevant provisions are essentially identical, *see e.g. In re Hurbace,* 61 B.R. 563 (Bankr.W.D.Tex.1986), interpretations of old 11 U.S.C. § 104(a)(1) is helpful and informative in divulging the meaning underlying 11 U.S.C. § 503(b)(1)(A). *See e.g. Trustees of Amalgamated Ins. Fund v. McFarlins,* 789 F.2d 98, n. 1 (2d Cir.1986); *In re Jartran, Inc.,* 732 F.2d 584 (7th Cir.1984).

estate is in the interest of every creditor; the costs incident to such preservation are necessary expenses of administration within the provision of the Code just as it was a necessary expenditure within the terms of Section 64(a)(1) of the Act. 3 *Collier on Bankruptcy,* ¶ 503.04[1][A][i] (15th ed. 1986).

## PRESENT DIRECTORS

■ Congress realized that "unless the debts incurred by the debtor-in-possession could be given priority over the debts which forced the estate into bankruptcy in the first place, persons would not do business with the debtor-in-possession, which may inhibit rehabilitation of the business and thus harm the creditors." *In re Mammoth Mart, Inc.,* 536 F.2d at 953. Bearing in mind that some claims of most creditors were not intended by Congress to have such priority, the First Circuit Court of Appeals in *In re Mammoth Mart, Inc.,* 536 F.2d 950 (1st Cir.1976) developed a two-part test for determining whether a debt should be afforded administrative priority. According to the *Mammoth* test, administrative priority is granted only where the claim meets the following criteria: (1) "arise(s) from a transaction with the debtor-in-possession" and (2) is "beneficial to the debtor-in-possession in the operation of the business." *Id.* at 954; *accord In re White Motor Corp.,* 831 F.2d 106, 110 (3d Cir.1987); *see also In re Jartran,* 732 F.2d 584, 587 (7th Cir.1984). Although the bankruptcy courts for the Eastern District of New York have not had the opportunity to approve or disapprove the rationale of the *Mammoth* line of cases as it relates to the granting of administrative priority under 11 U.S.C. § 503(b)(1)(A), the Bankruptcy Court for the Western District of New York in *In re Keegan Utility Contractors, Inc.,* 70 B.R. 87 (Bankr.W.D.N.Y.1987) and the District Court for the Southern District of New York in *In re Baths International, Inc.,* 31 B.R. 143 (S.D.N.Y.1983) (affirming the Bankruptcy Court for the Southern District of New York in *In re Baths International, Inc.,* 25 B.R. 538 (Bankr.S.D.N.Y.1982)) have cited with approval the analysis set forth in those cases. We also cite with approval the analysis undertaken by *Mammoth.*

In *Mammoth,* the court held that claims for severance pay were entirely based upon services performed for the bankrupt employer pre-petition and not for services performed for the *debtor-in-possession.* Since the employees' entitlements stem from past services, pre-petition, there were no actual and necessary services provided to the debtor-in-possession in helping to effectuate a reorganized, healthy corporation. Accordingly, their claim for administrative priority was unwarranted.

■ The Applicants claim that they have rendered beneficial services to the Debtors-in-Possession allowing them to effectuate a plan of reorganization. However, the record before us lacks sufficient evidence to substantiate that the Applicants conferred beneficial services to the Debtors. Furthermore, there is no allegation that they have not been paid for such services. Section 503 merely requires such payment; it does not promote all claims held by these directors to priority status.

The Applicants' claim administrative priority for post-petition legal fees necessary to defend allegations asserted against them as officers and directors of the Debtors, not for legal fees incurred in defense of the Debtors. Presently, the Applicants are pursuing settlement negotiations to avoid possible litigation predicated upon their pre-petition acts in their roles as officers and directors of the Debtors. All of the operative facts, legal relationships, and conduct of the Applicants upon which is based the threatened litigation occurred pre-petition. The indemnification agreement entered into between the Applicants and the Debtors occurred pre-petition. Any duty of the Debtors to indemnify the Applicants arises from services provided to the pre-petition Corporation not for services rendered post-petition to the Debtors-in-Possession. As such, the Applicants' legal fees claim arises from their pre-petition services rather than any post-petition services. *See In re Christian Life Center,*

821 F.2d at 1374; *accord, In re White Motor Corp.*, 831 F.2d at 110.

The court, however, is mindful of the hardship placed upon the present directors in the event they must fund their own defense in future litigation. The bankruptcy court, as a court of equity, realizes that

> [t]he basic problem here is that the officers and directors have served in reliance on indemnification, and to have them now personally held liable for costs and judgments against them for acts done in their corporate capacities, and giving them only dubious general unsecured claims against their now-bankrupt employer corporation seems unfair. *In re Baldwin United Corp.*, 43 B.R. 443, 456 (D.C.Ohio 1984).

However, their plight is neither better nor worse than that of thousands of other general creditors who rendered services or supplied goods in reliance upon the expectation of payment.

█ Congress balanced the possible inequities that may result if one is not granted administrative expense priority (*see* U.S.C. § 503) with that of equality of distribution of creditors, and concluded that "equitable factors may not defeat the established principles of administrative priority," *id.* at 457, and that "the most significant policy in bankruptcy jurisprudence is equality of treatment of like-situated creditors." *Id.* The granting of administrative priority under § 503(b)(1)(A) of Title 11 should only be granted under extraordinary circumstances, to wit, when the parties seeking priority have sustained their burden of demonstrating that their services are actual and necessary to preserve the estate.

Thus, while the Applicants may be entitled to indemnification by the Debtors, whether by statute or by contract or both, as compensation for services rendered, *See In re Christian Life Center*, 821 F.2d 1370 at 1374; *In re Baldwin United Corp.*, 43 B.R. 443, 454–56 (S.D.Ohio 1984), the unfairness to the Applicants is not sufficient to grant the claim administrative priority. Since the Applicants demand for administrative priority stems from pre-petition services rendered to the Corporation rather than post-petition services to the Debtors-in-Possession, the Applicants' claim for administrative priority must be denied. Such a decision is warranted in keeping with the policies underlying 11 U.S.C. § 503(b)(1)(A).

## THE FORMER DIRECTORS

The essence of the argument made on behalf of the former directors is that since the complaint does not differentiate between former and present directors there is no extra expense imposed upon the estate by including them within the class of directors for whose legal expenses the Applicants seek administrative priority.

This argument is unpersuasive for three reasons:

(1) As indicated above, not even the present directors are entitled to the priority they seek.

(2) Their premise that the threatened litigation does not differentiate between former and present directors highlights the fallacy of the arguments made on behalf of the present directors and further serves to substantiate the court's conclusion that there is no reason to grant an administrative priority even to the present directors.

(3) Even were the present directors entitled to reimbursement, the argument urged by the ex-directors would mandate a denial of this application on behalf of the present directors. The estate would be best served by letting the present directors convince their counsel that defending them without additional charge would impose no additional burden on counsel while saving the estate from sharing in the expense.

## CONCLUSION

We recognize, as stated in Applicants' brief at pages 15 and 16 that:

> It is well recognized that indemnification of officers and directors for costs incurred in connection with the defense of their good faith exercise of business judgment is necessary and desirable to attract capable individuals to serve in this capacity. The public policy underlying the Business Corporation laws permitting officer and director indemnifica-

tion is specifically intended to induce people to perform such services without fear of personal liability from intended lawsuits against them for actions in their official capacity.

We further recognize that this ruling may indeed, to some extent, have a chilling effect upon competent persons contemplating becoming corporate directors.

We are sympathetic to the plight of the Applicants, but no more so than to any other creditor. The Applicants' arguments justify recognition of their claim; they do not justify an administrative priority at the expense of others.

Notably absent from any of the points raised by Applicants is a discussion in any way in which their situation differs from that of thousands of other general creditors of this estate. Any insolvency proceeding produces a chilling effect in the community in which the debtor conducts its business. All trade creditors had transacted business with the debtors expecting full and timely payment. All creditors are to no small extent damaged by the existence of this proceeding and the likelihood of little or no payment. The Applicants are unable to show that their position differs from that of the general creditor body in sufficient magnitude to overcome the primary policy of the Bankruptcy Code:— equality of distribution.

We therefore conclude that:—

(1) This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

(2) The Applicants have a "claim" against the Debtors as that term is defined pursuant to 11 U.S.C. § 101(4).

(3) The Applicants have failed to establish that their claim is entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(1)(A).

The Applicants may file unsecured claims against the Debtor. To the extent that they may not have done so within the time set forth in any "bar claim" order, such claims may be filed within 30 days of the date of the order to be settled herein.

SETTLE ORDER.