**In re BATHS INTERNATIONAL, INC., Debtor.**

**No. 83 Civ. 0740 (HFW).**

United States District Court, S.D. New York.

June 20, 1983.

Helfand & Alter by Bruce R. Alter, Jodi L. Goldman, New York City, for Reuben H. Donnelley Corp.

Rattet & Vogelman by Robert L. Rattet, New York City, for Baths Intern., Inc.

## MEMORANDUM DECISION

WERKER, District Judge.

This is an appeal from an order of the United States Bankruptcy Court for the Southern District of New York, John J. Galgay, Judge, which denied the application of appellant Reuben H. Donnelley Corporation (RHD) for allowance of an administrative priority claim pursuant to 11 U.S.C. § 503(b)(1)(A).

In April 1982, Baths International, Inc. (Baths) filed a chapter 11 petition in bankruptcy under the Bankruptcy Reform Act of 1978. Baths is engaged in the business of retail and wholesale distribution of hot tubs, spas, saunas and related equipment. A large part of its pre-petition marketing plan was a program of national advertising in various Yellow Page Telephone Directories throughout the United States. This advertising was placed through a contract with RHD. RHD is a national representative for publishers of classified telephone directories. It does not publish any directories on its own but acts as a middleman between publishers and advertisers for the placement of Yellow Page advertising. RHD claims that certain advertising fees due it from Baths for ads placed and closed before the filing of the bankruptcy petition but published post-petition, should be allowed as administrative expenses.

Classified Yellow Page Directories are published independently for each region of the country. Each directory has a deadline date called the "closing date" after which no further orders for advertising or removal of orders previously made can take place. The actual publication date of the directory may not occur for up to six months after the closing date. After publication, the publisher bills the purchaser of the advertisement. After the closing date, actual publication of the directories takes place and directory distribution to the general public is thereafter made.

In this case, the advertising was placed for publication under an agreement dated September 5, 1978 between RHD and Big Toe Advertising, which is Baths' in-house advertising agency. Under the agreement, Baths, through Big Toe Advertising, would request an ad be placed in a particular Yellow Pages. Each ad was treated separately and was submitted to RHD on an order form. Once an ad was accepted by the Yellow Pages publisher, the order form became part of the agreement. RHD would bill Big Toe. If Big Toe did not pay, RHD could bill Baths directly. If RHD wanted to raise its commission, it had to inform Big Toe at least 30 days prior to closing. The agreement could be cancelled at any time by either party. However, such cancellation was not effective for advertising in Yellow Pages whose closing date had passed. Although the relationship between Baths and RHD was governed by one agreement, each contract to publish an advertisement in a particular Yellow Pages is looked upon as a separate contract. (This statement of the facts is taken from Judge Galgay's decision).

The issue presented was framed by the bankruptcy court as follows: "The controversy here is the classification of the debt due RHD for advertising ordered pre-petition, with a pre-petition closing date, but not published until after the filing of the petition .... Where closing and publication dates straddle the petition date, the question arises—which date is the date of performance. If performance is completed at closing, the contract to place Yellow Pages advertising is deemed executed at the time of the filing and the debt is a pre-petition one. If performance is com-

pleted upon publication, the contract is executory at the time of filing and any debt arising from post-petition performance is administrative." *In re Baths International, Inc.,* 25 B.R. 538 (Memorandum & Order) (Bkrtcy.S.D.N.Y.1982).

Bankruptcy Code § 503(b)(1)(A) allows as administrative expenses "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." RHD contends that the services it rendered with regard to the placement of advertising resulted in a direct benefit to the estate. However, "the mere fact that ads are placed by RHD prior to the petition will continue to benefit the estate in the post-petition period is insufficient to give RHD a priority. To gain priority status, performance must be given to the trustee or debtor in possession, not the pre-petition debtor." *In re Baths International, Inc.,* at 540.

Judge Galgay relied on the cases of *In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir.1976) and *Denton & Anderson Co. v. Induction Heating Corp.,* 178 F.2d 841 (2d Cir.1949). He stated:

> "Regarding contracts to place Yellow Pages advertisements, performance is completed on the closing date. Therefore, regarding the "straddle" advertisements where the closing date predates the filing of the petition, performance is rendered to a pre-petition company, not the debtor in possession. Baths ordered advertisements and RHD accepted them before the petition filing. RHD then placed advertisements with the appropriate Yellow Pages. Once the pre-petition closing dates of those directories passed, RHD had performed. After the closing date, RHD could no longer withdraw from its obligation with Baths or modify that contract as to closed ads. Service Contract ¶ 16. All that remained from (sic) RHD to do after the closing date were mere bookkeeping and ministerial functions: checking that the advertisements are actually published and billing. The closing date is the effective date of

performance. When that date falls before the filing of a Chapter 11 petition, the performance is rendered to a pre-petition company, not the debtor." *In re Baths International, Inc., supra,* at 540–41.

Judge Galgay concluded that the application by RHD for allowance of its claim as a priority administrative expense failed to meet the standard for that status. This court agrees with Judge Galgay's decision. RHD's application for allowance of an administrative priority claim was properly denied.

Accordingly, the order of the bankruptcy court is affirmed.

SO ORDERED.