## In re BALPORT CONSTRUCTION CO., INC., Debtor.

### Bankruptcy No. 90 B 20285.

United States Bankruptcy Court, S.D. New York.

Jan. 14, 1991.

Marc Stuart Goldberg & Associates, P.C., New York City, for CCS.

Gainsburg, Greene & Hirsch, (Hal M. Hirsch, of counsel), Purchase, N.Y., for debtor.

## DECISION ON APPLICATION OF CCS FOR AN ORDER GRANTING AN ADMINISTRATION CLAIM

HOWARD SCHWARTZBERG, Bankruptcy Judge.

CCS Associates, Inc. ("CCS"), a creditor in this Chapter 11 case, has moved for an order granting it an administration claim pursuant to 11 U.S.C. § 503(b)(3)(D) for making a substantial contribution in this case. CCS seeks a total administration claim in the sum of $37,977.68, although approximately $28,000.00 represents invoiced services performed by CCS for the debtor, Balport Construction Co., Inc., before the debtor filed with this court its voluntary petition for reorganizational relief on April 6, 1990.

CCS was retained by order of this court, dated May 15, 1990, as an expert and witness for the preparation of documentation and trial materials necessary to substantiate the debtor's state court litigation against Con Edison for damages resulting from construction delays experienced by the debtor and allegedly caused by Con Edison. CCS is a consulting firm in the construction industry, specializing in evaluating construction damages.

The debtor contends that CCS should be compensated for its services in support of the debtor's state court litigation in accordance with the standards prescribed under 11 U.S.C. § 330(a) for the actual, necessary services rendered in this Chapter 11 case by professionals and others retained on behalf of the debtor and not pursuant to the substantial contribution provision expressed in 11 U.S.C. § 503(b)(3)(D). Therefore, the debtor reasons that CCS should be compensated only for those beneficial services performed by CCS after the commencement of the Chapter 11 case and the entry of the May 15, 1990 order retaining CCS. The debtor objects to including any portion of CCS's prepetition services in the total compensation claimed because the retention order was not effective *nunc pro tunc* and because CCS should not be allowed to elevate its prepetition unsecured claim for professional services to the level of an administration claim by combining the prepetition unsecured claim with the claim for post-petition services performed pursuant to the May 15, 1990 order of retention.

### FINDINGS OF FACT

1. On April 6, 1990, Balport Construction Co., Inc. ("Balport" or "debtor") filed with this court a voluntary petition for reorganizational relief under Chapter 11 of the Bankruptcy Code and continued in possession of its assets and managed its business as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2. Prior to the filing of this Chapter 11 case, the debtor was engaged in the business of general contracting, specializing in sewer construction projects.

3. In 1982, during the course of a construction project under contract with the City of New York, the debtor claims it encountered alleged utility interference from Consolidated Edison Company of New York, Inc. ("Con Edison"). Accordingly, the debtor commenced a civil litigation against Con Edison in 1982. It retained the law firm of Altieri, Kushner, Miuccio & Frind, P.C. ("the Altieri firm") as its counsel in the law suit.

4. The debtor sought compensatory damages against Con Edison in the sum of

$846,609.00 and punitive damages in the sum of $1,000,000.00, claiming that Con Edison was liable to the debtor for Con Edison's allegedly wrongful acts and omissions, which the debtor claimed delayed and prevented the debtor from performing its construction contract with the City of New York.

5. The debtor's action against Con Edison in the New York State Supreme Court continued for approximately eight years, until 1990, when the trial was scheduled to begin on May 16, 1990.

6. Pursuant to a Notice of Settlement of Order dated May 3, 1990, the debtor's bankruptcy attorneys prepared a proposed order for submission to this court which sought to authorize the debtor to retain the Altieri firm as special litigation counsel for the Con Edison state court litigation and to retain experts for the preparation of, and appearance at, the trial. The proposed order also would authorize the debtor to retain Robert Cavaliero, a former officer of the debtor, and CCS, as experts and witnesses, for the preparation and appearance with respect to the trial with Con Edison. The stated compensation for these services was $125.00 per hour for each of the named experts, to be paid from the proceeds recovered, if the litigation was successful.

7. In the event that the debtor's litigation with Con Edison was not successful, the proposed order provided that Robert Cavaliero and CCS would be "afforded an administrative expense claim pursuant to 11 U.S.C. Section 503(b)(1)(A)."

8. The proposed order and supporting application, dated May 3, 1990, did not clearly reveal that CCS had asserted a prepetition claim against the debtor for consultation and expert services performed for the debtor in connection with the Con Edison litigation before the filing of the debtor's Chapter 11 case, which services were invoiced by CCS to the debtor in the approximate amount of $25,000.00.

9. In a letter from Marc Stuart Goldberg, the attorney for CCS, to the attorney for the debtor, dated May 8, 1990,

Goldberg referred to the prepetition CCS claim and said:

Your representations to me with regard to the proposed order of retention noticed for settlement for May 9, 1990, seems to be somewhat inapposite to the order itself.

When we spoke last week, you indicated that the debtor would make application to Judge Schwartzberg for authority to satisfy the prepetition indebtedness owing to C.C.S. Associates ("CCS"), as well as in satisfaction of postpetition charges to be incurred.

What brought about the change? I don't know that the proposed order is satisfactory to CCS.

10. In a letter from Goldberg to the attorney for the debtor, dated May 11, 1990, Goldberg repeated his objection to omitting certain prepetition services in the retention order in the following language:

My facsimile transmittal of May 9, 1990 indicated an obligation owing CCS Associates, Inc., through April 26, 1990, in the sum of $29,537.40. That obligation includes 12 hours of work (or a total fee charge of $1,500.00) subsequent to the filing of the Chapter 11 case.

Your proposed amended order requests authority to pay CCS, for pre-petition services, in the sum of $13,327.50. Why the difference. Please rectify the error.

11. On May 15, 1990, the debtor's attorneys submitted an amended order, with notice, to the Assistant United States Trustee, the Altieri firm, Robert Cavaliero and Marc Stuart Goldberg, authorizing the debtor to retain the Altieri firm as special litigation counsel and to retain experts for the preparation and appearance with respect to the pending Con Edison litigation in the New York State Supreme Court.

12. The amended order specifically stated that CCS had been "providing litigation preparation assistance to the debtor for a substantial period of time prior to the date of the petition ...".

13. Included in the decretal clauses in the proposed amended order was the following language:

ORDERED, that the Debtor be, and the same hereby is authorized to pay to CCS ASSOCIATES, INC. THIRTEEN THOUSAND THREE HUNDRED TWENTY SEVEN ($13,327.50) DOLLARS and FIFTY CENTS, for services performed thereby prior to the date of petition in preparation of the trial of the subject litigation pursuant to the terms and conditions of this Order.

14. The court refused to sign the order as submitted unless the decretal paragraph dealing with payment to CCS for prepetition services was deleted. The debtor's counsel agreed to the deletion of this paragraph, which was stricken by the court.

15. The decretal paragraph dealing with the compensation of CCS was modified to read as follows:

ORDERED, that in the event that the subject action does not produce a recovery to the Debtor sufficient to satisfy compensation to CCS ASSOCIATES, INC., then CCS ASSOCIATES, INC. be, and the same shall be, afforded an administrative expense claim, solely to the extent of postpetition services rendered pursuant to 11 U.S.C. Section 503(b)(1)(A), in this case for such uncompensated services performed herein.

Subject to application and award by the court pursuant to 11 U.S.C. §§ 330 and 331.

16. Mr. Goodman, the president of CCS, testified that CCS was recommended to the debtor by the Altieri firm, for whom CCS had previously performed expert services in connection with other construction damage litigations. There was no written contract between the debtor and CCS governing or describing the services to be performed by CCS.

17. Albert S. Tablante, an attorney with the Altieri firm testified that CCS performed valuable services, prepared important charts, and provided substantial preparation and expert services with respect to the pending Con Edison litigation, including evaluations, which were used and submitted to Con Ed's attorneys during settlement discussions.

18. On the eve of the trial, the debtor and Con Edison settled their law suit, with the result that the debtor received $390,000.00 in payment for its claims against Con Edison. Therefore, CCS was not required to testify because the trial was discontinued, although CCS had prepared valuable charts, documents and supplied beneficial expertise with respect to the construction damage claims alleged in the litigation between the debtor and Con Edison which had been pending for approximately eight years.

18. There was no dispute that the work and expertise supplied by CCS was instrumental in achieving a satisfactory settlement of the debtor's litigation with Con Edison. Nor was there any evidence to contradict the debtor's position that the entire span of CCS's services, both prepetition and post-petition, substantially contributed to the settlement of the debtor's pending law suit with Con Edison and the debtor's receipt of $390,000.00 in connection with the settlement.

19. For its services during the period from January 30, 1990 through May 16, 1990, when the Con Edison litigation was settled, CCS billed the debtor in the sum of $50,997.68, of which $13,000.00 had been received by CCS before the filing of CCS's Chapter 11 petition on April 6, 1990.

20. The total sum claimed by CCS as a substantial contribution to this Chapter 11 case and, therefore, an administrative expense pursuant to 11 U.S.C. § 503(b)(3)(D), is $37,977.68. Included in this total figure is the sum of $28,037.40 for services rendered by CCS before the debtor filed its Chapter 11 petition on April 6, 1990. The balance, namely $9,940.28, represents postpetition services performed by CCS on behalf of the debtor.

## DISCUSSION

This dispute raises the issue as to whether 11 U.S.C. § 503(b)(3)(D) may authorize an administrative expense priority for prepetition as well as post-petition services regarded by the parties as constituting a substantial contribution to the debtor's Chapter 11 case, when, in fact, the appli-

cant was expressly retained by an order of this court to perform post-petition professional services in accordance with 11 U.S.C. § 330 and to be compensated for such post-petition services pursuant to 11 U.S.C. § 503(b)(1)(A).

### Section 503 Administrative Expense Priority

A professional person retained under 11 U.S.C. § 327 to render services in a bankruptcy case may receive compensation for such services in accordance with the standards delineated in 11 U.S.C. § 330(a)(1), namely:

> reasonable compensation for actual, necessary services ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title....

The allowed compensation for such post-petition professional services performed on behalf of a bankruptcy estate is expressly treated as an administrative priority pursuant to 11 U.S.C. § 503(b)(2) which provides:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> \*     \*     \*     \*     \*     \*
>
> (2) compensation and reimbursement awarded under section 330(a) of this title.

The debtor's attorneys did not refer to section 503(b)(2) in their order of May 15, 1990 under which CCS was retained as a professional expert for compensation pursuant to 11 U.S.C. § 330. Instead, the order states that CCS is entitled to an administrative expense priority in accordance with 11 U.S.C. § 503(b)(1)(A), which regards as an administration priority "the actual, necessary costs and expenses of preserving the estate ... or commissions for services rendered *after* the commencement of the case." (Emphasis added). Although section 503(b)(1)(A) expressly relates to professionals entitled to compensation under section 330(a), the result is the same because section 503(b)(1)(A) also treats such expenses and services as administrative priority expenses. The crucial point is that services qualifying under either section 503(b)(2) or section 503(b)(1)(A), must have been rendered after the filing of the petition for relief pursuant to a duly entered order of retention.

The fact that CCS had an ongoing relationship with the debtor before the Chapter 11 case, which continued after the filing for the purpose of assisting and preparing the debtor's pending law suit against Con Edison, does not mean that the prepetition claim may be converted to a post-petition administrative priority expense.

> Neither the debtor's silence nor its continued business dealings with Webster Oil can transform a pre-petition claim into an administrative expense priority over the claims of the debtor's other pre-petition general creditors. The fact that the debtor was authorized to continue in business without interruption pursuant to 11 U.S.C. § 1108 does not support the conversion of the pre-petition debt into an administrative claim simply because of the ongoing relationship between the parties.

*In re Lockwood Enterprises*, 13 B.C.D. 932, 933 (Bankr.S.D.N.Y.1985).

■ Administrative expenses under 11 U.S.C. § 503 are payable only if they are subsequent to the filing of the debtor's petition. *Trustees of Amalgamated Insurance Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir.1986). This is so because administrative expense claims are created by statute and not by the courts or on the basis of equitable grounds arising out of the conduct of the parties. *In re Lockwood Enterprises*, 13 B.C.D. at 933.

In the instant case, CCS seeks to disregard the May 15, 1990 retention order which the debtor's counsel submitted to the court after negotiations with CCS's attorney. CCS's desire to elide the May 15, 1990 order is understandable because it said nothing about CCS's prepetition services; it did not have a *nunc pro tunc* feature, and it did not refer to 11 U.S.C. § 503(b)(3)(D) with respect to CCS having made a substantial contribution to the debtor's Chapter 11 case. Thus, if CCS were to

rely solely on the express language of the May 15, 1990 order of retention, and specifically the reference to 11 U.S.C. § 503(b)(1)(A), CCS would be entitled to claim an administrative expense priority only for its post-petition services on behalf of the debtor, and would be a general unsecured creditor for the prepetition services, occupying a status no higher than the debtor's other unpaid prepetition general unsecured creditors. Hence, CCS pins its hopes on the concept of substantial contribution within the meaning of 11 U.S.C. § 503(b)(3)(D).

There is no question that when the debtor filed its Chapter 11 petition on April 16, 1990, CCS was a creditor to the extent of the unpaid services which it rendered in connection with the debtor's litigation with Con Edison. Their services were invoiced and claimed in the amount of $28,037.40. In accordance with 11 U.S.C. § 101(9)(A), a creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor …". In the instant case, CCS seeks to avoid the preclusive effect of the retention order which was prepared by the debtor's attorneys after consultation with CCS's attorney and, instead, seeks compensation as a creditor who has made "a substantial contribution" in this Chapter 11 case within the meaning of § 503(b)(3)(D). Moreover, CCS regards all of its services, including prepetition invoiced claims amounting to $28,037.40 and post-petition invoiced claims, in the sum of $9,940.28, as "a substantial contribution" to the debtor's case, to the full extent of $37,977.68. CCS reasons that the post-petition settlement with Con Ed would not have been achieved without the benefit of all of CCS's services, both prepetition and post-petition.

## Substantial Contribution—Post–Chapter 11

■ Code section 503(b)(3)(D) differs from other administrative expense categories specified in section 503 because it is expressly limited to certain specified third parties, including creditors, who make substantial contributions in Chapter 9 Municipal Adjustment cases or in Chapter 11 reorganization cases exclusively. Third parties who make substantial contributions in cases under either Chapters 7, 12, or 13 are not eligible for this reimbursement. Because section 503(b)(3)(D) does not require that the expense must have been incurred under an order of retention for compensation authorized pursuant to sections 327 and 330, as is required for reimbursement of administrative expenses covered by section 503(b)(2), it follows that section 503(b)(3)(D) applies to situations not governed by sections 327 and 330, or other retention provisions authorized by the court. Section 503(b)(3)(D) was intended to reimburse creditors, indenture trustees, or unofficial committees of creditors or equity security holders who were not specifically appointed under court orders pursuant to sections 327 or 1102. Thus, even if the United States trustee or the debtor in possession in a Chapter 11 case chose not to retain a creditor, or any of the entities specified in section 503(b)(3)(D) for the purpose of performing beneficial services in furtherance of the Chapter 11 case, such creditor or included entity may receive reimbursement as an administrative expense priority for the expenses regarded as substantially contributing to the Chapter 11 case.

An order of retention is, therefore, not required in order to qualify for reimbursement for substantial contributions to a Chapter 11 case by the entities specified in section 503(b)(3)(D). However, section 503(b), in general, focuses exclusively on the post-petition aspect of the case, so that prepetition expenses are excluded. Thus, creditors who placed prepetition advertising in the telephone directories which appeared after the Chapter 11 petition was filed, without any further expenses being incurred post-petition, were not entitled to an administrative expense priority, even though the post-petition services and advertising benefitted the debtor in possession. *In re Jartran, Inc.*, 732 F.2d 584 (7th Cir. 1984); *In re Baths International, Inc.* 31 B.R. 143 (S.D.N.Y.1983). Similarly, to the extent that a bonus claimed due to a creditor was attributable to beneficial services

rendered prepetition, such creditor was not entitled to an administrative expense priority for the bonus, even though it did not come due until after the debtor's Chapter 11 petition was filed. *In re Amarex, Inc.*, 853 F.2d 1526 (10th Cir.1988).

■ In the instant case, the May 15, 1990 retention order pre-empts the subject of administration expenses claimed by CCS and expressly limits CCS's reimbursement for administrative expenses for those consulting services and related expenses performed by CCS after the debtor's petition was filed on April 6, 1990. Even if the specific language in the May 15, 1990 retention order, and the reference to section 330, were to be disregarded, and if CCS could substitute instead section 503(b)(3)(D) as authority for its reimbursement of administrative expenses, the result would be similar because only those services and related expenses incurred after the debtor filed its Chapter 11 petition may qualify as a "substantial contribution" to the debtor's Chapter 11 case. The prepetition expenses incurred by CCS may not be elevated over the claims of other prepetition general unsecured creditors because such services and expenses did not accrue during a Chapter 11 case and might have been paid routinely in the same fashion as the claims of the debtor's other prepetition creditors had there been no Chapter 11 filing. When CCS elected to perform additional post-petition services for the debtor in accordance with the May 15, 1990 retainer order, it placed itself in a different position than other prepetition creditors with respect to the beneficial post-petition services and expenses. Because CCS's post-petition services substantially contributed to the satisfactory settlement of CCS's law suit against Con Edison, CCS would be entitled to be reimbursed for such post-petition services and expenses in the sum of $9,940.28 in accordance with 11 U.S.C. § 503(b)(3)(D).

Although CCS's prepetition services may have been the starting point or foundation for its post-petition services, all of which were treated by CCS as one continuous project which culminated and produced a benefit during the post-petition period when the Con Edison settlement was achieved, such prepetition services may not be reimbursed as an administrative priority expense. Notwithstanding how CCS viewed its contribution to the Con Edison settlement, CCS's entitlement to an administrative priority expense status is entirely based upon statutory creation, as reflected in the Bankruptcy Code. Section 503(b) in general, and section 503(b)(3)(D) specifically, draw a distinction between prepetition and post-petition services and expenses. Only those services and expenses which were performed or incurred by entities described in section 503(b)(3)(D) during the pendency of the Chapter 11 case and which constituted a "substantial contribution" to the Chapter 11 case, are eligible for reimbursement on an administrative priority basis. Although CCS's prepetition services were beneficial to the debtor, and aided the settlement efforts, such services were not provided with a view towards furthering an existing Chapter 11 case. During the debtor's prepetition phase, CCS was in no different position than any of the debtor's other general unsecured creditors in that no prepetition creditors believed they were furnishing credit to a Chapter 11 debtor experiencing financial difficulties. Therefore, CCS is entitled to be reimbursed on an administrative priority basis only for those services and expenses which it continued to furnish after the filing of the debtor's Chapter 11 petition, and during a post-petition period when CCS could not be compelled to continue performing without payment in full under its prepetition oral agreement with the debtor. For this post-petition activity, CCS is entitled to be rewarded on an administrative priority level because section 503(b)(3)(D) is intended to encourage specific entities to make substantial contributions in Chapter 9 and Chapter 11 cases. However, CCS's claim for reimbursement for its prepetition services and expenses should not be blessed with an administrative priority status when the language of the statute which created this priority, and which must be construed strictly, does not expressly authorize the elevation of prepetition claims. Accordingly, the courts have limited administrative

expense claims under section 503(b) to those expenses solely attributable to post-petition activities. Although CCS contends that principles of equity and fairness should dictate a contrary result for its claim, to hold that CCS should recover all of its unpaid invoices as an administrative priority would be at the expense of other creditors and would violate the principle that all similarly situated creditors should share equally.

The logic of appellants' fairness argument would apparently require priority for all creditors whose extension of credit *benefited* the debtor-in-possession regardless of when the credit was extended. This construction would be contrary to the reason the priority was created: as a practical incentive to achieving reorganization for the benefit of all creditors.

*In re Jartran, Inc.*, 732 F.2d at 590. Accord, *Trustees of Amalgamated Insurance Fund v. McFarlin's*, 789 F.2d at 101.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(B).

2. CCS has established that it performed post-petition services on behalf of the debtor in possession and in accordance with the order entered by this court on May 15, 1990 which retained CCS to perform such services, for which CCS is entitled to compensation and reimbursement in the sum of $9,940.28, in accordance with 11 U.S.C. § 503(b)(2).

3. Absent the May 15, 1990 order of retention, CCS would, nonetheless, be entitled to reimbursement as an administrative expense priority for such services and expenses in connection therewith, to the extent of $9,940.28 as a substantial contribution to the debtor's Chapter 11 case, pursuant to 11 U.S.C. § 503(b)(3)(D).

4. The debtor's objection to the balance of CCS's claim as an administrative expense priority is sustained because such balance, amounting to $28,037.40 constitutes a general unsecured prepetition claim which accrued before the debtor filed its Chapter 11 petition on April 6, 1990.

SETTLE ORDER on notice.